**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br>1519 New Hampshire Avenue NW<br>Washington, DC 20036,<br><br>     Plaintiff,<br><br>     v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT<br>500 12th Street SW<br>Washington, DC 20536,<br><br>     Defendant. | Civ. Action No. 20-3071 |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the release of agency records requested by the Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS").

2.    EPIC challenges ICE's failure to make a timely response to EPIC's Freedom of Information Act requests ("EPIC's FOIA Requests") for records about ICE's use of facial recognition software ("FRS") ("EPIC's FRS FOIA Request"), and for records about ICE's use of Clearview AI facial recognition services and communications between ICE and Clearview AI ("EPIC's Clearview AI FOIA Request").

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(6)(E)(iii), (a)(4)(B). This Court has personal jurisdiction over Defendant ICE.

4.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

5.     Plaintiff EPIC is a nonprofit organization, incorporated in Washington, DC, established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government activities. EPIC's Advisory Board includes distinguished experts in law, technology, public policy, and cybersecurity. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

6.     Defendant ICE is a component of the DHS, which is a federal agency within the meaning of 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.

## Facts

7.     ICE is one of the largest law enforcement agencies in the United States. The agency enforces federal border laws and conducts homeland security investigations, operating both at the U.S. border and the interior.[1]

---

[1] U.S. Immigration and Customs Enforcement, *Who We Are*, https://www.ice.gov/about (last visited Oct. 25, 2020).

8.      In conducting these investigations, ICE uses facial recognition services (FRS) to generate candidate lists to identify unknown individuals or locate unknown persons.[2]

9.      Facial recognition services are software that can identify a human face in an image and compare elements of that face to a database of other pictures to produce a match.

10.     Commercial vendors of facial recognition services maintain private databases of images which may be obtained by "scraping" them from internet websites, including social media sites.[3]

11.     Clearview AI is a commercial vendor of facial recognition services.

12.     ICE has contracted with Clearview AI, a startup that provides FRS matching images to a database obtained from Facebook and other social media sites.[4]

13.     The Federal Procurement Data System lists a contract between ICE and Clearview AI, Award ID 70CMSD20P00000130.[5]

14.     There are substantial privacy concerns with Clearview AI, a startup which obtains images by scraping social media sites in violation of the terms of service of these sites.[6]

---

[2] U.S. Dep't of Homeland Sec., Privacy Impact Assessment for the ICE Use of Facial Recognition Services, DHS/ICE/PIA-054 (May 13, 2020), https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-frs-054-may2020.pdf [hereinafter ICE PIA].
[3] ICE PIA at 16.
[4] Ryan Mac, Caroline Haskins, & Logan McDonald, Clearview's Facial Recognition App Has Been Used by the Justice Department, ICE, Macy's, Walmart, and the NBA, Buzzfeed News (Feb. 27, 2020), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement.
[5] Federal Procurement Data System, Contracts (last accessed Oct. 26, 2020 at 8:52 AM) https://www.fpds.gov/ezsearch/search.do?indexName=awardfull&templateName=1.5.1&s=FPDS.GOV&q=70CMSD20P00000130https://www.fpds.gov/ezsearch/search.do?indexName=awardfull&templateName=1.5.1&s=FPDS.GOV&q=70CMSD20P00000130.
[6] Kashmir Hill, The Secretive Company That Might End Privacy as We Know It, N.Y. Times (Feb. 10, 2020), https://www.nytimes.com/2020/01/18/technology/clearview-privacy-facial-recognition.html.

***Privacy Impact Assessment on Facial Recognition***

15.     On May 13, 2020 DHS published a Privacy Impact Assessment (PIA) of ICE's use of facial recognition services.

16.     The PIA provides a list of procedures which Homeland Security Investigations (HSI) agents must follow before and after using FRS for identification.[7]

17.     The PIA states that ICE and DHS are working to create trainings on FRS procedures.[8]

18.     The PIA does not provide information on the current training HSI agents receive to implement those procedures.

19.     The PIA also does not provide information on guidance or requirements for image collection.

20.     Searches of federal, state, and local databases provide ICE with access to substantial amounts of biometric and biographical data collected by law enforcement and state government.

21.     Facial recognition technology has a significant error rate, particularly among women and people of color.[9]

22.     Access to Clearview AI provides ICE with the images and biographical information on millions of Americans through its database of over three billion images.[10]

23.     ICE has not disclosed whether it uses other commercial FRS vendors.

---

[7] ICE PIA at 6-12.
[8] *Id.* at 11, 22-23.
[9] Joy Buolamwini and Timnit Gebru, Gender Shades: Intersectional Accuracy Disparities in Commercial Gender Classification, 81 Proceedings of Machine Learning Research 1-15 (2018) (analyzing commercial facial recognition products, finding error rates as high as 34.7 percent, for women of color).
[10] Kate O'Flaherty, Clearview AI's Database Has Amassed 3 Billion Photos. This Is How If You Want Yours Deleted, You Have To Opt Out, Forbes (Jan. 26, 2020) https://www.forbes.com/sites/kateoflahertyuk/2020/01/26/clearview-ais-database-has-amassed-3-billion-photos-this-is-how-if-you-want-yours-deleted-you-have-to-opt-out/#172af04e60aa.

24.     ICE's use of commercial FRS vendors poses a substantial threat to privacy by exposing the

data of individuals, possibly obtained against social media site policies, to ICE without a warrant.

25.     FRS searches allow ICE to collect a large amount of personal information without a

warrant. In addition, errors in facial recognition searches may pull the wrong individuals into

criminal databases.

## EPIC's FOIA Requests

### EPIC's Clearview AI FOIA Request

26.     On March 6, 2020 EPIC submitted a FOIA request to ICE's Freedom of Information Act

office via email.

27.     EPIC's FOIA request sought records about the agency's use of Clearview AI technology.

28.     Specifically, EPIC sought:

(1) Emails and communications about Clearview AI, Inc., including but not limited to the
    following individuals and search terms:
      a.  Clearview
      b.  Clearview AI
      c.  Hoan Ton-That
      d.  Tor Ekeland
      e.  Third parties with an email address ending in "@clearview.ai"
(2) All contracts or agreements between ICE and Clearview AI, Inc.;
(3) All presentations mentioning Clearview;
(4) All Clearview sales materials;
(5) All privacy assessments, including but not limited to Privacy Threshold Analysis and/or
    Privacy Impact Assessments, that discuss the use of Clearview AI technology.

29.     EPIC sought "news media" fee status under 5 U.S.C. § 552(a)(4)(A)(ii)(II), and a waiver

of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

30.     EPIC sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

31.     On March 16, 2020 ICE FOIA Office requested clarification on part 1 of EPIC's request,

seeking the individuals or offices to search.

32.     On March 18, 2020 EPIC responded by email to ICE's request, specifying all ICE offices should be searched.

33.     On April 21, 2020 ICE FOIA Office acknowledged receipt of EPIC's Clearview AI FOIA Request, granted EPIC's request for expedited treatment, and granted EPIC's fee waiver.

34.     In the same email ICE FOIA Office determined that EPIC's request under part 1 was "overly burdensome" and refused to perform a search for part 1.

35.     On April 24, 2020 ICE FOIA Office requested clarification on the range of dates for the requested search.

36.     On May 6, 2020 EPIC responded to narrow the scope of part 1 to include:

> Office of Enforcement and Removal Operations,
> Office of Intelligence,
> Office of Homeland Security Investigations,
> Office of Policy,
> Office of Information Governance and Privacy,
> Secure Communities,
> Matthew T. Albence, Deputy Director and Senior Office Performing the Duties of the Director,
> Derek N. Benner, Exec. Associate Director for HIS and Senior Official Performing the Duties of the Deputy Director,
> Chris Kelly, Acting Chief of Staff,
> Henry Lucero, Exec. Associate Director, Enforcement and Removal Operations,
> Alysa D. Erichs, Acting Exec. Associate Director, Homeland Security Investigations

37.     On May 6, 2020 in a separate email EPIC responded to narrow the dates to be searched to: "January 1, 2018 to present".

38.     EPIC has received no further communications about EPIC's Clearview AI FOIA Request from ICE.

39.     The status of EPIC's Clearview AI FOIA request per DHS' "Check Status Request" page listed the status on October 26, 2020 as "Request for Docs Sent".

**EPIC's FRS FOIA Request**

40.     On June 10, 2020 EPIC submitted a FOIA Request to ICE's Freedom of Information Act
Office via email.

41.     EPIC's FOIA Request sought records pertaining ICE's use of facial recognition software
(FRS).

42.     Specifically, EPIC sought:

(1) All contracts between ICE and commercial FRS vendors;
(2) All documents related to ICE's approval process for new commercial FRS
vendors, including but not limited to:
    i. Document detailing the approval process and requirements for commercial
    FRS vendors;
    ii. Documents related to the approval of all commercial FRS vendors
    currently in use by ICE;
    iii. Documents related to reviewing commercial FRS vendors that have been
    used under "exigent circumstances" without prior approval;

(3) All training materials and standard operating procedures for Homeland Security
Investigations ("HSI") agents regarding use of FRS, including but not limited to
the following:
    i. Existing training materials and standard operating procedures around HSI
    agent use of FRS;
    ii. Existing training materials and standard operating procedures regarding
    restrictions on the collection of probe photos;
    iii. Training materials and standard operating procedures being developed for
    HSI agent use of FRS;
    iv. Training materials and standard operating procedures being developed
    regarding the use of probe photos;

(4) All audits conducted by the ICE Office of Professional Responsibility or by HSI
supervisors related to HSI agent use of FRS, including but not limited to:
    i. All audits conducted on commercial FRS vendors;
    ii. All audits of the ICE Investigation Case Management system case files
    that include use of FRS;

(5) All documents related to agreements between ICE and law enforcement agencies
regarding use of law enforcement agency FRS, including but not limited to:
    i. Memorandums of understanding ("MOU") or other documents of
    agreement between ICE and law enforcement agencies regarding use of
    law enforcement agency FRS;

7

      ii.   Documents detailing ICE's approval process and requirements for law enforcement agency FRS;

     iii.   Documents related to ICE's approval of all law enforcement agency FRS currently in use by ICE;

     iv.   Documents related to ICE reviewing law enforcement agency FRS that have been used under "exigent circumstances" without prior approval.

43.     EPIC sought "news media" fee status under 5 U.S.C. § 552(a)(4)(A)(ii)(II), and a waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

44.     EPIC sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

45.     In an email dated June 19, 2020, the ICE FOIA Office acknowledge receipt of EPIC's FOIA request.

46.     In an email dated June 19, 2020, the ICE FOIA Office requested clarification on part 5.

47.     In an email dated July 15, 2020 EPIC responded with the requested clarification.

48.     In an email dated September 9, 2020 the ICE FOIA Office stated that the request was "in the queue to be processed by an analyst."

49.     EPIC has received no further communication about EPIC's FRS FOIA Request from ICE.

50.     The status of EPIC's FOIA request per DHS' "Check Status Request" page listed the status on October 26, 2020 as "Request for Docs Sent."

## EPIC's Constructive Exhaustion of Administrative Remedies

51.     Today is the 234th day since ICE received EPIC's Clearview AI FOIA Request.

52.     Today is the 138th day since ICE received EPIC's FRS FOIA Request.

53.     ICE has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(A).

54.     ICE's failure to make a determination within the statutory time limit violates the FOIA.

55.     EPIC has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count I

### Violation of FOIA: Failure to Comply With Statutory Deadlines

56.     Plaintiff asserts and incorporates by reference paragraphs 1-55.

57.     Defendant ICE has failed to make a determination regarding EPIC's FOIA Requests within twenty days and has thus violated the deadline under 5 U.S.C. § 552 (a)(6)(A)(i) and 6 C.F.R. § 5.5.

58.     Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Requests. 5 U.S.C. § 552(a)(6)(C)(i).

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

59.     Plaintiff asserts and incorporates by reference paragraphs 1-55.

60.     Defendant has wrongfully withheld agency records requested by Plaintiff.

61.     Plaintiff has constructively exhausted applicable administrative remedies with respect to Defendant's withholding of the requested records.

62.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Requests. 5 U.S.C. § 552(a)(6)(C)(i).

63.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

64.     WHEREFORE, Plaintiff prays that this Court:

65.     Order Defendant to immediately conduct a reasonable search for all responsive records;

66.     Order Defendant to disclose to Plaintiff all responsive, non-exempt records;

67.    Order Defendant to provide an affidavit detailing the agency's search methodology including search terms and the type of search performed, and confirming that all files likely to contain responsive materials were searched;

68.    Order Defendant to produce a *Vaughn* Index identifying any records or portions of records withheld, if such records exist, stating the statutory exemption claimed and explaining how disclosure would damage the interests protected by the claimed exemption;

69.    Order Defendant to produce records sought without the assessment of search fees;

70.    Order Defendant to grant EPIC's request for fee waiver.

71.    Award EPIC costs and reasonable attorney's fees incurred in this action; and

72.    Grant such other relief as the Court may deem just and proper.


Respectfully submitted,


By:    *s/ Jeramie D. Scott*
Jeramie D. Scott, D.C. Bar # 1025909
EPIC Senior Counsel

Alan Butler, D. C. Bar# 1012128
EPIC General Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Avenue NW
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)


Dated: October 26, 2020